**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| **Darren M. Johnson,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **1:21cv918 (RDA/JFA)** |
| | ) | |
| **Harold W. Clarke,** | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION**

Darren M. Johnson ("Petitioner" or "Johnson"), a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the validity of his January 28, 2014 convictions in the Circuit Court for the City of Hampton, Virginia for first-degree murder, abduction, carjacking, and robbery. Commonwealth v. Johnson, Case Nos. CR12M00855-00 thru -03. On September 20, 2021, the Respondent filed a Rule 5 Answer and a Motion to Dismiss, with supporting briefs and exhibits. Petitioner has exercised his right to file responsive materials to the motion to dismiss pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K). [Dkt. Nos. 14, 15, 17]. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the respondent's Motion to Dismiss must be granted and the petition will be dismissed with prejudice.

**I. Background**

The Circuit Court of the City of Hampton convicted Petitioner of first-degree murder, abduction, carjacking, and robbery during a two-day jury trial on January 27-28, 2014. The jury sentenced him to three life sentences plus twenty years in prison. The circuit court imposed the sentence fixed by the jury in its final order dated January 28, 2014.

Johnson appealed to the Court of Appeals of Virginia alleging the trial court had erred by admitting hearsay; not granting a motion to strike and reducing the robbery charge to larceny; limiting his closing argument; not severing the robbery charge from the murder, abduction and carjacking charges; and denying his motion for a continuance. [Dkt. No. 9-1 at 1-11]. A judge of the Court of Appeals of Virginia's denied his petition for appeal on November 12, 2014. Johnson v. Commonwealth, Record No. 0240-14-1. [Dkt. No. 9-1]. The Supreme Court of Virginia refused his subsequent petition for appeal in a summary order dated August 21, 2015. Johnson v. Commonwealth, Record No. 150245 at 49.[1]

On June 13, 2020, Johnson, proceeding pro se, filed a motion to vacate in the circuit court alleging the court still had subject matter jurisdiction, based on manifest injustice and the ends of justice, to consider if it had erred in admitting hearsay. Johnson v. Commonwealth, Case No. CL20-2428. [Dkt. No. 9-3]. The circuit court dismissed the motion to vacate on January 6, 2021 [Dkt. No. 9-4], finding the motion was untimely under Va. S. Ct. Rule 1:1 because Johnson had not established an exception to that rule, which states that the circuit court lost jurisdiction to disturb the judgment after the expiration of the 21-days after the judgment was entered. [Dkt. No. 9-4]. Johnson did not appeal the dismissal.[2]

On December 3, 2020, Johnson mailed a state habeas petition to the Supreme Court of Virginia, which was filed on December 7, 2020. [Dkt. No. 9-5]. The state habeas petition asserted three claims:

---

[1] Petitioner was granted a delayed appeal by the Supreme Court of Virginia on February 4, 2015. (VSCT R. at 9).

[2] Johnson filed a similar motion to vacate in his criminal cases on October 6, 2020 [Dkt. No. 1 at 4], which was denied on November 12, 2020. [Dkt. No. 1-3 at 7]. Johnson did not appeal the dismissal. See Virginia's Judicial System https://www.vacourts.gov/ (select Case Status and Information, Circuit Court Information page, Hampton Tab (search "Johnson, Darren," view record CR12000855-00, pleadings page) (last viewed Mar. 17, 2022); see also id., Supreme Court of Virginia and Court of Appeals of Virginia pages (search "Johnson, Darren," no results for appeal of motion to vacate) (last viewed Mar. 17, 2022).

> I. The Commonwealth failed to establish that the murder occurred in Virginia and that the courts had jurisdiction, both territorial and subject matter. [Id. at 9].
>
> II. The trial court allowed inadmissible evidence (hearsay from Rosilyn Young) at trial. [Id. at 12].
>
> III. The trial court lost subject matter jurisdiction when it allowed hearsay evidence from Rosilyn Young. [Id. at 14].

The Supreme Court of Virginia dismissed the petition on March 16, 2021 as untimely because it had not been filed within one year from the final disposition of Johnson's direct appeal, August 15, 2015. (VSCT R. at 70) (citing Va. Code § 8.01-654(A)(2)).

On July 12, 2021,[3] Johnson filed his federal petition for a writ of habeas corpus in this Court and alleges three grounds for relief:

> Ground One: During petitioner's trial the Commonwealth's Attorney failed to establish any proof or evidence that the alleged murder occurred within trial courts "territorial jurisdiction" or that the court had "subject matter jurisdiction, and not merely to venue" to try Petitioner, and thus such claim was not waived by failure to raise it pre-verdict. [Dkt. No. 1 at 17-21]'
>
> Ground Two: The trial court erred in allowing inadmissible hearsay evidence to be presented by Commonwealth through its witness, Rosilyn Young, because Petitioner never took the stand. [Id. at 21-23].
>
> Ground Three: The trial court erred by not barring the admission of hearsay as evidence the court lost subject matter jurisdiction. [Id. at 24-27].

## II. Statute of Limitations

A petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). In calculating the one-year period, however, the Court must exclude the time during which properly filed state collateral proceedings pursued by petitioner were pending. See 28 U.S.C. §

---

[3] For purposes of this motion, the Court will use the July 12, 2021 date (the date of Johnson's cover letter and the date he indicated he executed the § 2254 petition) as the date of filing because that is the earliest date the petition could have been filed. See Houston v. Lack, 487 U.S. 266, 276 (1988).

2244(d)(2); Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts).

Johnson's direct appeal proceedings concluded on August 15, 2015, but are deemed final for federal habeas purposes on November 15, 2015 — the date his time for seeking a petition for a writ of certiorari to the Supreme Court of the United States expired. See Harris v. Hutchinson, 209 F.3d 325, 328 n.1 (4th Cir. 2000) (the one-year period does not commence until the latest of either the date when judgment on direct review "became final" or "the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A)). While Johnson had until November 15, 2016 to file his federal habeas petition, he did not file his federal petition until July 12, 2021 — more than four years after his direct appeal was final for federal habeas purposes. The § 2254 petition is untimely unless the limitations period is tolled. The record establishes that Johnson is not entitled to statutory or equitable tolling.

*A. Statutory Tolling*

Johnson sent his state habeas petition to the Supreme Court of Virginia on December 3, 2020, which was after the federal one-year statute of limitations had already expired, and he is therefore not entitled to statutory tolling during the pendency of that state petition. See 28 U.S.C. § 2244(d)(2). In addition, the Supreme Court of Virginia determined that his state habeas petition was untimely under Virginia Code § 8.01-654(A)(2). (VSCT R. at 70). Accordingly, the state habeas proceedings did not toll the federal statute of limitations because the state habeas petition was not properly filed. See Pace, 544 U.S. at 417 (holding petitioner was not entitled to statutory tolling under 28 U.S.C. § 2244(d)(2) where state habeas petition was dismissed as untimely); Artuz v. Bennett, 531 U.S. 4, 8 (2000) (holding a state collateral proceeding is not "properly filed" for purposes of tolling the federal limitations period if it is filed untimely).

The same is true of Johnson's motion to vacate, which was filed on June 13, 2020 and dismissed on January 6, 2021.[4] Johnson v. Commonwealth, Case No. CL20-2428. [Dkt. No. 9-3].[5] As with his state habeas petition, the motion to vacate did not toll the federal habeas one-year statute of limitations because it had already lapsed prior to the time Johnson filed his federal habeas petition. See Vroman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not, however, 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. *Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations*.") (emphasis added); see also Trapp v. Spencer, 479 F.3d 53, 58-59 (1st Cir. 2007) (tolling "does not reset the clock on the limitations period ... but merely stops it temporarily, until the relevant applications for review are ruled upon"), abrogated on other grounds by Holmes v. Spencer, 822 F.3d 609 (1st Cir. 2016).

*B. Equitable Tolling*

A habeas petitioner may be permitted to file a federal habeas petition out of time if he can establish his entitlement to equitable tolling, which requires that the petitioner show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. See Holland v. Florida, 560 U.S. 631, 649 (2010) (citation omitted). The Fourth Circuit observed that equitable tolling is reserved for "those rare instances where — due to circumstances external to the party's own conduct — it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Harris, 209 F.3d

[4] Respondent's motion to dismiss asserts that the motion was filed on October 6, 2020, the date the motion was actually filed by the Clerk, but the records establish that the motion was sworn to on May 26, 2020, the cover letter accompanying the motion was dated June 19, 2020, and the cover letter was stamped received by the clerk on June 13 and 15, 2020. The earliest date in the record that the pleading could have been deemed filed is June 13, 2020. See Houston, 487 U.S. at 276. Even if the Court used May 26, 2020, the date the motion to vacate was signed and notarized, the petition would still be untimely.

[5] The same is true of the motion to vacate filed in the criminal proceedings. See, supra at note 2. The motion to vacate was filed after the federal statute of limitations had already lapsed.

at 330. Johnson argues three points in support of his assertion that his claims should be heard on the merits.

First, Johnson asserts that he acted diligently because he did not receive the DNA evidence he is relying upon in support of his argument for equitable tolling until December 29, 2021 [Dkt. No. 17 at 1]. As respondent established in his March 1, 2022 Supplemental Response, Johnson's trial counsel was aware of the fact that Dobbins's DNA had been found on the duct tape prior to Johnson's trial.[6] His direct appeal ended in 2015, and he waited over five years to pursue these claims, which are all based upon matters that he was aware of in 2014, or were available to him or his counsel.

Next, Johnson's jurisdictional argument has no merit. The victim was found dead at a home in the City of Hampton, which establishes the circuit court had both territorial and subject matter jurisdiction. See Porter v. Commonwealth, 661 S.E.2d 415, 427 (Va. 2008) (holding that circuit courts of the Commonwealth "have original jurisdiction of all indictments for felonies and of presentments, informations and indictments for misdemeanors," and that "all circuit courts have jurisdiction over all felonies committed in the Commonwealth." (citing Va. Code Ann. § 17.1-513 and Garza v. Commonwealth, 323 S.E.2d 127, 130 (Va. 1984)); Va. Code Ann. § 19.2-248 ("If a

[6] Johnson filed a copy of the alleged DNA evidence on January 10, 2022. [Dkt. No. 17]. The Court directed a response, which was submitted on March 1, 2022. [Dkt. No. 19]. Johnson filed a motion for summary judgment alleging the respondent had not filed a timely response [Dkt. No. 20] and a response to the respondent's Supplemental Response. [Dkt. No. 21]. The respondent's response was timely filed and the motion for summary judgment will be denied.

The respondent's response establishes that trial counsel had complete access to the prosecution's file and he had even been allowed to take it out of the office and use it to prepare for trial. The prosecutor's file included all of the DNA evidence submitted by Johnson, with the exception of the two-page December 30, 2013 Supplemental Report. The December 30, 2013 Supplemental Report provided the statistical information regarding the probability of including a person other than the persons tested and found Dobbins could not be eliminated as a contributor of the DNA tested for the DNA results obtained from "Item 24, Duct tape from near the on room to right of hallway." [Dkt. No. 17-2 at 3]. The fact that Dobbins's DNA had been found on Item 24, however, was contained in the May 8, 2012 Certificate of Analysis, which was in the prosecutor's file and disclosed to trial counsel. [Dkt No. 19 at 1-2, 6]. It was also known to defense counsel well prior to trial that Dobbins and Johnson had acted in concert. [Id. at 2]. Consequently, the December 30, 2013 Supplemental Report is not a basis for tolling.

mortal wound, or other violence or injury, be inflicted, or poison administered in one county or city, and death ensues therefrom in another county or city, the offense may be prosecuted in either."); see also Edwards v. Commonwealth, 808 S.E.2d 211, 216 (Va. Ct. App.) (the prosecution "can establish venue using either direct or circumstantial evidence") (citation omitted). Other evidence, including Johnson's admissions to Young, established that the offense took place at the Hampton home where the victim was found.

Johnson has also raised additional argument in his response to respondent's Supplemental Response. Johnson alleges prosecutorial misconduct in that the prosecutor argued that there was no DNA evidence in this case, the prosecutor committed fraud upon the court, and that his trial counsel was ineffective.

To prove prosecutorial misconduct, "a defendant bears the burden of showing (1) that the prosecutors engaged in improper conduct, and (2) that such conduct prejudiced the defendant's substantial rights so as to deny the defendant a fair trial." United States v. Alerre, 430 F.3d 681, 689 (4th Cir. 2005). To establish a claim of ineffective assistance of counsel, Johnson must prove that his claim is "substantial." Martinez v. Ryan, 566 U.S. 1, 14 (2012) (explaining petitioner "must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.") (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Whether a claim is substantial is measured under familiar principles governing claims of ineffective assistance set forth for in Strickland v. Washington, 466 U.S. 668 (1984).

During voir dire, the prosecutor asked the venire if they believed that there had to be scientific evidence (such as fingerprints, DNA, saliva, or semen) connecting the defendant to the crime. (1/27/14 Tr. at 76). Johnson cites to the portion of the voir dire where several members of

the venire indicated that they might have a problem if there was no such scientific evidence. (Id. at 75-76); the discussion of one juror, out of the presence of all the venire members, who was struck for cause because she believed there had to be scientific evidence connecting the defendant to the crime. [Dkt. No. 21 at 1] (citing 1/24/14 Tr. at 97-98);[7] and the prosecutor's rebuttal argument in closing (1/28/14 Tr. at 356, 357). Johnson does not reference his own counsel's opening where he told the jury that Johnson's DNA was not found on the victim's "body or in the house" (1/27/14 Tr. at 125), or his closing argument during which trial counsel emphasized the lack of DNA evidence. (Id. at 348-51, 354-55).

Voir dire is generally left to the sound discretion of the trial court. See Morgan v. Illinois, 504 U.S. 719, 729 (1992). The prosecutor is entitled during voir dire to ask questions to determine if any of the venire are biased and asking if the require scientific evidence is one of the potential biases a prosecutor faces. See Jackson v. State, 177 So. 3d 911, 925 (Ala. Crim. App. 2014) ("the prosecutor was entitled to obtain information from the members of the venire that would have assisted him in exercising his strikes" and "the State was entitled to know whether any member of the venire would negatively view a case in which there would be little scientific evidence or a murder weapon."); see also United States v. Fields, 483 F.3d 313, 355 n.39 (5th Cir. 2007) (observing that the term "CSI effect" describes a supposed influence that CSI shows have on jurors to demand scientific evidence, but noting such effect was "plausible" even though not "proven empirically"). Asking about scientific evidence during voir dire does not constitute misconduct, and petitioner was not prejudiced.

[7] The transcript reveals that several panel members were struck for cause for a variety of reasons: "No DNA bias;" belief that the defendant had to testify; pretrial publicity exposure; inability to follow the concert of action instructions; belief that a prior felony conviction made someone unbelievable; hardship (caretaker for an elderly person); the juror was a prior victim of a crime; and difficulty with the subject matter of the crimes to be tried. (1/27/14 Tr. at 87-96).

Likewise, the prosecutor's mention of the absence of DNA evidence linking Johnson to the offense occurred during his rebuttal argument and was in response to Johnson's trial counsel's closing argument that emphasized the absence of DNA evidence. "No prejudice exists where a prosecutor appropriately responds to defense counsel's arguments." Urena v. Lape, 373 F. Supp. 2d 449, 456 (S.D.N.Y. 2005) (citing United States v. Young, 470 U.S. 1, 12-13 (1985) ("the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo . . . If the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction."); see, e.g., United States v. Campbell, 347 F. App'x 923, 930 (4th Cir. 2009) ("invited responses" by prosecutor in response to defense counsel's argument "do nothing more than 'right the scale' [and] do not warrant reversal of a conviction." (citing Young, 470 U.S. at 12-13).[8]

Johnson's assertion of fraud upon the court has no merit.[9] Johnson's trial counsel knew about the DNA in advance of trial because the prosecutor had disclosed it to him. See, supra at note 6. Moreover, it is clear that the absence of DNA evidence linking Johnson to the crime was a

---

[8] In addition, instructions by the court that arguments of counsel not evidence negate any prejudice. See Bennett v. Angelone, 92 F.3d 1336, 1346-47 (4th Cir. 1996) (concluding prosecutor's improper argument did not deny due process in part because trial court instructed jury: "What the lawyers say is not evidence. You heard the evidence. You decide what the evidence is." (internal quotation marks omitted)). At trial, the circuit court instructed the jurors at the beginning of trial that what the attorneys say, "is not evidence and you must not consider it as evidence." (1/27/14 Tr. at 113). The court also instructed the jury at the end of trial when the attorneys would present their closing arguments that what the attorneys say, "is not evidence." (Id.). See Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").

[9] "Fraud upon the court is the most egregious species of fraud and covers that 'fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.' Examples of fraud upon the court include the bribing of the judge or a juror or the assertion of improper influence over the court." Bright v. Norshipco, 187 F.R.D. 536 (E.D. Va. 1998) (quoting Great Coastal Express, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 675 F.2d 1349, 1356 (4th Cir. 1982)). Here, the May 8, 2012 and July 2, 2012 Certificates of Analysis ("COA") were filed with the Court prior to trial. (CCT R. at 24-37). The May 8, 2012 COA noted that Dobbins could not be eliminated as a contributor to the duct tape. (Id. at 25). The prosecutor also filed a Notice on March 7, 2013 noting its intent to introduce DNA evidence at trial. (Id. at 170).

key part of his attorney's trial strategy—a strategy that began prior to voir dire as evident from his argument referring back to the voir dire questions about scientific evidence. (1/28/14 Tr. at 348-49). Indeed, defense counsel told the jury in his opening statement that even though the jurors would see evidence of a gruesome crime scene that no witness would "take the stand' and testify that Johnson's DNA was found on the victim's "body or in the house." (1/27/14 Tr. at 125).

A trial attorney's tactical decisions deserve a high degree of deference in habeas corpus review, and if there is even a chance that counsel's actions were based on sound tactical judgments, the presumption to that effect has not been overcome. See Darden v. Wainwright, 477 U.S. 168, 186 (1986); Strickland, 466 U.S. at 689; Matthews v. Evatt, 105 F.3d 907, 921 (4th Cir. 1997); see also United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987) (tactical decisions of trial attorney, if reasonably made, provide no basis for ineffective assistance claim). Defense counsel's tactical decision to take advantage of the absence of DNA evidence linking Johnson to the crime scene was clearly reasonable. Further, use of the DNA linking his co-defendant to the crime scene would have severely prejudiced his defense. Johnson's ineffective assistance of counsel claim has no merit under either prong of Strickland, and he has failed to establish cause to excuse his untimeliness.

Johnson's second argument relies, in part, upon his allegation that the DNA of his co-defendant, Wanda Dobbins, was found on the duct tape used on the victim. [Dkt. No. 17 at 2]. As noted herein, the DNA evidence was available for use at trial and expressly disclosed to his counsel prior to trial. Moreover, the DNA is not exculpatory, and, in fact, it is further evidence of his and Dobbins's guilt. The evidence at trial established that Johnson and Dobbins murdered the victim at the Hampton home where he was found on March 7, 2012. Johnson and Dobbins fled to Georgia together before the body was discovered, and Johnson admitted to his ex-wife in Georgia "that he

and Dobbins [had] killed Tommy Alley using duct tape and that they hit him. [Johnson] said that they wrapped Alley with duct tape and left him in the bathtub at 38 Eastmoreland Street" in Hampton. [Dkt. 9-1 at 1]. Thereafter, Johnson and Dobbins fled from police in a high-speed chase when police attempted to stop him in Georgia. [Id. at 7].

Johnson next argues that he was denied "exculpatory evidence," because he alleges the fact that the victim's son saw the victim alive on February 21, 2012, at 12:30 p.m. was not disclosed. [Dkt. No. 15 at 14]. Johnson alleges that the "exculpatory evidence" was contained in an affidavit submitted in support of a search warrant. Assuming that the attachment to Johnson's pleading is a portion of an affidavit filed in support of a search warrant, the affidavit could have been discovered prior to trial via a diligent investigation. See Va. Code Ann. § 19.2-57 (the executed warrant, with the inventory and the accompanying affidavit are filed with three days after the execution of the warrant in the circuit court clerk's office). United States v. Wilson, 901 F.2d 378, 381 (4th Cir. 1990) ("[W]here the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the Brady doctrine.").[10]

[10] Johnson has the burden to establish a claim that the prosecutor withheld exculpatory evidence. See Porter v. Zook, 898 F.3d 408, 438 (4th Cir. 2018) ("The burden of proof [of a Brady violation] rests with [Appellant].") (quoting United States v. King, 628 F.3d 693, 701-02 (4th Cir. 2011)). Johnson's burden requires that he establish the material was not disclosed to his defense counsel, or that it was otherwise unavailable to a diligent defendant or his attorney, and he does not explain how or from whom he obtained the portion of the affidavit he filed with his pleading. A reasonable investigation, however, would have discovered the search warrant and the affidavit because the officers involved in the investigation of the case were known to him and his counsel from at least August 12, 2012, the date of the preliminary hearing, approximately five months prior to the trial that ended in a mistrial and seventeen months prior to his second trial at which he was found guilty. See Lynn v. Tarney, 405 F. App'x 753, 762 (4th Cir. 2010) (no Brady violation where evidence was readily available trial counsel before trial upon diligent investigation); Hoke v. Netherland, 92 F.3d 1350, 1355 (4th Cir. 1996) (finding no due process violation where the defendant's lawyer had access to all of the allegedly withheld witnesses and would have learned of them had he undertaken a reasonable investigation); Wilson, 901 F.2d at 381 (denying relief where defense counsel could have obtained the exculpatory information by questioning a witness in preparation for trial); Lugo v. Munoz, 682 F.2d 7, 9-10 (1st Cir. 1982) (where facts are available to a diligent defense attorney, no due process violation can be established) (cited with approval in Wilson, 901 F.2d at 380)); see, e.g., United States v. Brother Constr. Co. of Ohio, 219 F.3d 300, 316 (4th Cir. 2000) (Brady rule does not apply "if the evidence in question is available to the defendant from other sources, either directly or via investigation by a reasonable defendant," such as filing a FOIA request with the state highway department).

Johnson's third argument also lacks merit. The admission of Young's testimony involved a matter of state law that was resolved against him on direct appeal. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"); Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998) (a claim that "rests solely upon an interpretation of Virginia's case law and statutes . . . is simply not cognizable on federal habeas review.") (citation omitted). Johnson's arguments do not warrant equitable tolling.

*C. Actual Innocence*

To the extent Johnson's arguments could be construed to be asserting actual innocence, they have no merit. Actual innocence may allow review of an untimely habeas petition, McQuiggin v. Perkins, 569 U.S. 383, 392 (2013), and qualify for equitable tolling, but a petitioner must demonstrate that "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649. "[T]he second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary and beyond its control." Menominee Indian Tribe v. United States, 136 S. Ct. 750, 756 (2016); see Carpenter v. Douma, 840 F.3d 867, 872 (7th Cir. 2016) (noting Supreme Court had recently reiterated that the extraordinary circumstances element is met "only where the circumstances that caused a litigant's delay are both extraordinary and beyond [his] control.") (quoting Menominee Indian, 136 S. Ct. at 756) (emphasis added).

---

Johnson also has the burden of establishing his counsel, who had open file discovery, was unaware of the search warrant and the affidavit. Johnson has not established the alleged Brady violation.

"[C]laims of actual innocence are rarely successful," Schlup v. Delo, 513 U.S. 298, 324 (1995), however, and "should not be granted casually." Wilson v. Greene, 155 F.3d 396, 404 (4th Cir. 1998). The standard of review for demonstrating innocence under Schlup is a demanding one. It requires that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" McQuiggin, 569 U.S. at 401 (quoting Schlup, 513 U.S. at 316).

In order to establish a fundamental miscarriage of justice exception to the AEDPA's statute of limitations, a petitioner must present *new* evidence to support his claim of actual innocence, and "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327 (emphasis added). Johnson has not proffered any "new reliable evidence" demonstrating a colorable claim of actual innocence. Coleman v. Thompson, 501 U.S. 722, 730 (1991); Sharpe v. Bell, 539 F.3d 372, 377 (4th Cir. 2010). The alleged new DNA evidence, as noted herein, is not new and is actually further evidence of his guilt. See, supra at note 6. Likewise, the alleged exculpatory evidence was available prior to trial. Johnson has failed to satisfy Schlup's high standard or demonstrate that his untimely claims are entitled to be review under McQuiggin. Accordingly, his petition is time-barred, and must be dismissed.

**III. Exhaustion and Default**

Even if not untimely, the claims do not warrant relief. Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. See 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan

v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia must have presented the Supreme Court of Virginia with the same factual and legal claims raised in his § 2254 petition. See, e.g., Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002).

If the merits of a petitioner's federal habeas claims have not been presented to the Supreme Court of Virginia, his claims are nevertheless deemed exhausted if they would be found to be defaulted if the petitioner presented his claims in a subsequent state habeas petition. Hedrick v. True, 443 F.3d 342, 364 (4th Cir. 2006) (claim is "technically" exhausted if "a state procedural rule would bar consideration of the claim [if it] was later presented to the state court") (citing Gray v. Netherland, 518 U.S. 152, 161-62 (1996)).[11] Thus, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and ... prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." Id. at 162.

Federal courts may not review barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255, 260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman, 501 U.S. at 753-54; Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). A court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995).

---

[11] If Petitioner attempted to reassert the defaulted claims in a second state habeas petition, the claims would be found to be either successive and barred by Virginia Code § 8.01-654(B)(2), untimely under the state habeas statute of limitations under § 8.01-654(A)(2), or barred under both statutes.

*A. Claim 1*

Claim 1 alleges the trial court did not have jurisdiction to convict Johnson because the prosecutor failed to prove the murder happened within the territorial jurisdiction of the state circuit court. Johnson raised this claim in his motion to vacate, which was dismissed, and he failed to appeal. His failure to appeal constitutes a procedural default that precludes federal review. See Whitley v. Bair, 802 F.2d 1487, 1500 (4th Cir. 1986) (failure to appeal adverse decision of state habeas court constitutes a bar to further federal review of a claim). Johnson also included the claim in his habeas petition in the Supreme Court of Virginia (VSCT R. at 54),which was dismissed as untimely pursuant to the state habeas statute of limitations. (VSCT R. at 70) (citing Va. Code Ann. § 8.01-654(A)(2). See Bennett v. Angelone, 92 F.3d 1336, 1343 (4th Cir.), cert. denied, 519 U.S. 1002 (1996) ("[a] habeas petitioner is barred from seeking federal review of a claim that was presented to a state court and 'clearly and expressly' denied on the independent, adequate state ground of procedural default."); Sparrow v. Dir., Dep't of Corrs, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (recognizing § 8.01-654(A)(2) as an independent and adequate bar).

The default aside, this is an alleged error of state law, and it has no merit. In Virginia,

> [a]s a general rule, a crime must be tried where it occurred. See Code § 19.2-244. Code § 19.2-247, however, provides an exception for homicide prosecutions to which this general rule is inapposite. See Code § 19.2-247 (establishing venue for homicides where it is unknown where the crime occurred). But even so, Code § 19.2-247 underscores the general preference that crimes be tried where they were committed by treating homicides that occur "under circumstances which make it unknown where such crime was committed," as if they were committed in the city or county in which the victim's body was located.

Kirby v. Commonwealth, 762 S.E.2d 414, 416 (Va. Ct. App. 2014). Here, the victim's body was found in the City of Hampton (TT at 135, 146, 240), and the indictments were returned by a Hampton grand jury. The circuit court was a proper venue and had subject matter jurisdiction over the offenses. See generally, Porter, 661 S.E.2d at 426-28 (discussing venue and subject matter

jurisdiction, and noting that all circuit courts in Virginia have subject matter jurisdiction for all felonies committed within Virginia). Claim 1 is untimely, defaulted, and without merit.

*B. Claims 2 and 3*

Claims 2 and 3 are related in that Claim 2 alleges that allowing hearsay violated Johnson's rights because he never took the stand and that this alleged error caused the state circuit court to lose jurisdiction (Claim 3). As with Claim 1, these two claims are defaulted, untimely, and without merit. The alleged inadmissible hearsay at issue were statements Johnson made to his ex-wife, Young, which were clearly both admissions against interest and a party admission because they implicated Johnson in the murder of the victim. The Fourth Circuit recently affirmed a federal conviction, noting that under Federal Rule of Evidence 801(d)(2), which authorizes the admission of an opposing party's statement, "a defendant's own statements constitute 'admissions by a party-opponent and [are] admissible pursuant to this Rule." United States v. Benson, 957 F.3d 218, 229 (4th Cir. 2020) (citations omitted). Benson also held that the defendant's statements were admissible as a statement against interest under Rule 804(b)(3). Id. Claim 2 has no merit and will be dismissed.[12]

The alleged basis for Claim 3, the improper admission of hearsay, also has no merit. The evidence was properly admitted under recognized exceptions to the hearsay rule. Claim 3 is not only defaulted but is also without merit.

---

[12] Virginia recognizes both exceptions. See Lewis v. Commonwealth, 441 S.E.2d 47, 49 (Va. Ct. App. 1994) ("A statement that is against the penal interest of the declarant at the time it is made is admissible as a declaration against interest exception to the hearsay prohibition."); Alatishe v. Commonwealth, 404 S.E.2d 81, 82 (Va. Ct. App. 1991) ("Any statement by a party to the proceedings, including an out-of-court statement by a defendant in a criminal case, is admissible as [an] exception to the hearsay rule when offered against that party."); see also McCarter v. Commonwealth, 566 S.E.2d 868, 871 (Va. Ct. App. 2002) (party admissions are admissible regardless of whether they are inculpatory or incriminating when made, or whether the party testifies).

## IV. Conclusion

For the foregoing reasons, the motion to dismiss the petition [Dkt. No. 7] must be granted, Johnson's motion for summary judgment [Dkt. No. 20] must be denied, and the petition must be dismissed with prejudice and an appropriate Order shall issue.[13]

Entered this 17 day of March, 2022.

Alexandria, Virginia

/s/

Rossie D. Alston, Jr.
United States District Judge

[13] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.